1   WO

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8

9   Jacob Dillard,                        No. CV-22-01511-PHX-DMF

10              Plaintiff,                 **ORDER**

11   v.

12   Commissioner     of    Social    Security
     Administration,

13

14              Defendant.

15

16          At issue is the denial of Plaintiff Jacob Dillard's application for disability insurance

17   benefits under the Social Security Act ("Act"). On September 7, 2022, Plaintiff filed a

18   Complaint with this Court, seeking review of the denial of benefits. (Doc. 1) The Court has

19   reviewed Plaintiff's Opening Brief (Doc. 16), Defendant Commissioner's Answering Brief

20   (Doc. 19), Plaintiff's Reply Brief (Doc. 20), and the administrative record (Doc. 15, R.).

21   This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and with the parties' consent to

22   Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Docs. 6, 12) The Court now

23   vacates the final decision of the Commissioner (R. at 15-26) and remands for further

24   administrative proceedings.

25   I.     **BACKGROUND**

26          On June 17, 2019, Plaintiff filed an application for Title II Disability Insurance

27   Benefits, alleging disability beginning December 10, 2011. (R. at 15, 232) Plaintiff's

28   application   was   denied   initially   on   December   6,   2019   (R.   at   69-86),   and   upon

reconsideration. (R. at 106-21) Plaintiff subsequently requested a hearing, held on November 16, 2020 (R. at 33-61), and ALJ Laura Bernasconi issued a decision denying Plaintiff's application on July 29, 2021. (R. at 15-26) The Appeals Council denied Plaintiff's request for review, at which point the ALJ's decision became final. (R. at 1-6) Following this unfavorable decision, Plaintiff filed the present appeal.

After considering the medical evidence and opinions, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 10, 2011, the alleged onset date. (R. at 18) The ALJ found that Plaintiff had the following severe impairments: neurodevelopmental disorder, attention deficit hyperactivity disorder (ADHD), bipolar disorder, depression, anxiety, and autism spectrum disorder. (*Id.*) In addition, the ALJ found that Plaintiff had non-severe impairments of tremors, vision impairment, bilateral hearing impairment, respiratory disorder, and hypothyroidism. (*Id.*) Further, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1, specifically listings 12.02, 12.04, 12.06, 12.10, and 12.11. (*Id.* at 18-20) In making this finding, the ALJ determined that Plaintiff's mental impairments did not meet the paragraph B or C criteria. (*Id.*)

In assessing Plaintiff's residual functional capacity ("RFC"), the ALJ found that Plaintiff's symptom testimony was not entirely consistent with the evidence of record. (R. at 20-22) The ALJ found partially persuasive the opinions of the state agency psychological consultants; psychological consultative examiner Jeremiah Isbell, Psy.D.; and examining provider Kristine Autry, Ed.D. (R. at 22-24) The ALJ found generally persuasive the opinion of an internal medicine consultative examiner and found limitedly persuasive the opinion of treating provider Amanda Kerr, D.O. (*Id.* at 23-24) Ultimately, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels with non-exertional limitations as follows: Plaintiff could "perform simple, routine and repetitive work not on a production-based system with few, if any changes to the work place setting and environment[,]" could occasionally interact with supervisors and

coworkers, could not work on teams or in tandem with others, and could never interact with the public. (R. at 20) Relying on the testimony of a vocational expert, the ALJ determined that Plaintiff could perform medium, unskilled, specific vocational preparation 2 occupations such as dishwasher, hospital cleaner, and industrial cleaner. (R. at 24-25) Consequently, the ALJ concluded that Plaintiff was not disabled. (R. at 25-26)

## II.    LEGAL STANDARD

A district court only reviews the issues raised by the party challenging an ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). If the court finds that the ALJ's decision was not based on substantial evidence or was based on legal error, the court may set aside the decision. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence requires "more than a mere scintilla but less than a preponderance" and should be enough evidence "as a reasonable mind might accept as adequate to support a conclusion." *Id*. (*quoting Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). An ALJ's decision should be upheld if "evidence is susceptible to more than one rational interpretation," but a district court should "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id*. (quotations and citations omitted).

In determining whether a claimant is disabled under the Act, the ALJ must follow a five-step analysis. 20 C.F.R. § 404.1520(a). First, the ALJ must determine whether a claimant is participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id*. Second, the ALJ determines if a claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled. *Id*. Third, the ALJ determines whether the claimant's impairment meets or equals a listing in Appendix 1 of Subpart P of 20 C.F.R. § 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant disabled, and the inquiry ends. *Id*. If the ALJ must proceed to step four, the ALJ determines whether the claimant's RFC allows the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled. *Id*. If the ALJ must proceed to step five, the ALJ determines

1  whether the claimant's RFC allows the claimant to perform other work. 20 C.F.R. §

2  404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

3  **III.    ANALYSIS**

4        Plaintiff raises three issues for the Court's consideration: (1) that the ALJ erred in

5  failing to find that Plaintiff met Listing 12.11 from December 10, 2011, to November 30,

6  2016, as determined by reviewing provider R. Pereyra, Psy.D.; (2) that the ALJ erred in

7  evaluating the medical opinions; and (3) that the ALJ erred in evaluating Plaintiff's

8  symptom testimony. (Doc. 16 at 1) Plaintiff requests that the Court vacate the ALJ's

9  decision and remand his case for payment of benefits or, in the alternative, remand for

10  further proceedings. (*Id*. at 12-14) The Commissioner asks the Court to affirm, or if the

11  Court finds error, to remand for further proceedings. (Doc. 19 at 22-25)

12        **A.    Listing 12.11**

13        Plaintiff first argues that the ALJ erred by failing to find that Plaintiff met Listing

14  12.11 from December 10, 2011, to November 30, 2016, as determined by reviewing

15  provider R. Pereyra, Psy.D. (Doc. 16 at 6-7; Doc. 20 at 2-4) Plaintiff asserts that the ALJ

16  did not meaningfully discuss the opinion of R. Pereyra, Psy.D., never acknowledging that

17  R. Pereyra, Psy.D., opined that Plaintiff met Listing 12.11 for the closed period of

18  December 10, 2011, to November 30, 2016. (Doc. 16 at 6-7)

19        *1.  Legal standard*

20        At step three of the sequential evaluation process, the ALJ determines if a claimant

21  has an impairment or combination of impairments that meets or equals an impairment

22  contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d). If a claimant shows

23  that his impairment or combination of impairments meets or equals a listed impairment, he

24  will be found presumptively disabled. *See* 20 C.F.R. §§ 416.925-416.926. An impairment

25  meets a listed impairment if it satisfies all of the criteria of that listed impairment. *See*

26  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th

27  Cir. 2013); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). To "equal" a listed

28  impairment, the claimant "must establish symptoms, signs, and laboratory findings" at least

equal in severity and duration to each element of the listed impairment. *Tackett*, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526).

"Although a claimant bears the burden of proving that she has an impairment or combination of impairments that meets or equals the criteria of a listed impairment, an ALJ must still adequately discuss and evaluate the evidence before concluding that a claimant's impairments fail to meet or equal a listing." *Cunningham v. Astrue*, 2011 WL 5103760, at *3 (C.D. Cal. Oct. 27, 2011) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)) ("[I]n determining whether a claimant equals a listing under step three ... the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments.").

### 2.  Listing 12.11

Listing 12.11, "Neurodevelopmental Disorders," is satisfied by evidence from two categories:

A.  Medical documentation of the requirements of paragraph 1, 2, or 3:

    1.  <u>One</u> or both of the following:

        a.  Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or

        b.  Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").

    2.  Significant difficulties learning and using academic skills; or

    3.  Recurrent motor movement or vocalization.

AND

B.  Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

    1.  Understand, remember, or apply information (see 12.00E1).

    2.  Interact with others (see 12.00E2).

    3.  Concentrate, persist, or maintain pace (see 12.00E3).

    4.  Adapt or manage oneself (see 12.00E4).

1  20 C.F.R. § 404, Subpart P, Appx. 1, § 12.11.

2         *3.  Opinion of R. Pereyra, Psy.D.*

3       On April 1, 2020, R. Pereyra, Psy.D., completed the Disability Determination

4  Explanation for Plaintiff's claim at the reconsideration level. (R. at 106-21) Dr. Pereyra

5  evaluated Plaintiff's evidence of record and determined that Plaintiff met Listing 12.11

6  from December 10, 2011, to November 30, 2016. (R. at 115-17) For the paragraph A

7  criteria of Listing 12.11, Dr. Pereyra determined that Plaintiff had one or both of the

8  following: (1) frequent distractibility, difficulty sustaining attention, and difficulty

9  organizing tasks and/or (2) hyperactive and impulsive behavior. (R. at 115) For the

10  paragraph B criteria of Listing 12.11, Dr. Pereyra determined that Plaintiff had moderate

11  limitation in understanding, remembering, or applying information, and had marked

12  limitation in interacting with others; concentrating, persisting, or maintaining pace; and

13  adapting or managing oneself. (R. at 115-16) However, for the period following January 1,

14  2017, Dr. Pereyra found that Plaintiff did not meet any listed impairment, including Listing

15  12.11. (R. at 114-15) As for the paragraph B criteria of Listing 12.11 following January 1,

16  2017, Dr. Pereyra opined that Plaintiff had only mild limitation in understanding,

17  remembering, or applying information, and that Plaintiff had moderate limitation in

18  interacting with others; concentrating, persisting, or maintaining pace; and adapting or

19  managing oneself. (R. at 114) Dr. Pereyra also assessed Plaintiff's RFC and vocational

20  factors and determined that Plaintiff was not disabled. (R. at 117-21)

21         *4.  ALJ's findings*

22       At step three of the sequential disability evaluation process, the ALJ determined that

23  Plaintiff's mental impairments did not meet Listings 12.02, 12.04, 12.06, 12.10, or 12.11.

24  (R. at 18-20)

25       In the analysis, the ALJ determined whether Plaintiff met the paragraph B criteria,

26  including for Listing 12.11. (R. at 18-19) As for understanding, remembering, or applying

27  information, the ALJ found that Plaintiff had a moderate limitation. (R. at 19) In support

28  of this determination, the ALJ found that Plaintiff stated in his function report that he did

not follow spoken instructions well, could not pay bills, handle a savings account, or use a checkbook due to impulsivity and limited math skills, but Plaintiff stated that he could follow basic instructions. (*Id*.) The ALJ noted that although the psychological consultative examiner, Jeremiah Isbell, Psy.D., described that Plaintiff reportedly needed reminders, the examiner also observed that Plaintiff displayed a logical and linear thought process as well as no difficulty with decision-making. (*Id*.) As for interacting with others, the ALJ found that Plaintiff had a moderate limitation. (*Id*.) The ALJ found that Plaintiff stated in his function report that Plaintiff goes to restaurants, church, part-time work, and appointments on a regular basis; that Plaintiff got along well with authority figures; but that Plaintiff had difficulty getting along with family due to differences of opinion. (*Id*.) Although the psychological consultative examiner noted that Plaintiff had a socially awkward interaction style, the ALJ found that the examiner also observed that Plaintiff was appropriate overall and had a cooperative attitude. (*Id*.) As for concentrating, persisting, and maintaining pace, the ALJ found that Plaintiff had a moderate limitation. (*Id*.) Although the ALJ noted that Plaintiff stated in his function report that he could pay attention for twenty minutes and did not finish what he started, the psychological consultative examiner stated that Plaintiff had reported that medication was helping Plaintiff "get a grasp on focus and attention[.]" (*Id*.) As for adapting or managing oneself, the ALJ found that Plaintiff had a moderate limitation. (*Id*.) Plaintiff stated in his function report that he did not handle stress well and could handle changes in routine "okay," and the psychological consultative examiner observed that Plaintiff had fair judgment and insight. (*Id*.) In sum, because the ALJ found that Plaintiff did not have at least two marked limitations or one extreme limitation, the ALJ determined that Plaintiff did not satisfy the paragraph B criteria. (*Id*.)

### 5. Discussion

In determining whether Plaintiff met Listing 12.11, the ALJ did not discuss Dr. Pereyra's prior administrative medical finding that Plaintiff met Listing 12.11 for the closed period of December 10, 2011, through November 30, 2016. (*See* R. at 18-20) Pursuant to 20 C.F.R. § 404.1520b(c), an ALJ is not required to consider evidence "that is

inherently neither valuable nor persuasive[,]" including decisions by other governmental agencies, state agency disability examiner findings, and statements on issues reserved to the Commissioner, such as whether a claimant's impairment(s) meet a listing in 20 C.F.R. § 404, Subpart P, Appendix 1. Further, an ALJ is not required to adopt a prior administrative medical finding of a state agency consultant. 20 C.F.R. § 404.1513a(b)(1). Nevertheless, an ALJ must still consider such evidence according to 20 C.F.R. §§ 404.1520b and 404.1520c. *Id*.

Although an ALJ does not need to discuss all evidence that has been presented, the ALJ must explain why "significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Evidence suggesting that Plaintiff met a listed impairment is significant and probative. In the step three determination, the ALJ only considered Plaintiff's self-reported abilities as stated in Plaintiff's function report, completed in August 2019, and the June 2018 opinion of the psychological consultative examiner, Jeremiah Isbell, Psy.D. (R. at 22-23) The ALJ did not discuss or cite any evidence at step three related to the period prior to June 2018. Although an ALJ's assessment of the record evidence contained in the ALJ's RFC determination may support an ALJ's step three finding, the ALJ discussed little evidence from prior to 2018 in making Plaintiff's RFC determination. An ALJ should not selectively choose evidence from a claimant's record to support a finding of non-disability. *See Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001). The ALJ later considered Dr. Pereyra's opinion in making Plaintiff's RFC determination, but the ALJ still did not address Dr. Pereyra's opinion that Plaintiff met Listing 12.11 for a period ending November 30, 2016. (R. at 22-23) The ALJ's discussion of Dr. Pereyra's opinion in the RFC determination does not support the ALJ's step three finding. *C.f. Lewis v. Apfel*, 236 F.3d 505, 512 (9th Cir. 2001) (evidence discussed in a later section of ALJ decision may support step three finding); *Karla K. G. v. Saul*, 2021 WL 1259686, at *4 (D. Mont. Apr. 6, 2021) (ALJ did not err in not addressing opinion at step three where ALJ later sufficiently discussed opinion in RFC determination). Moreover, the ALJ discussed the consistency of Dr. Pereyra's opinion with

the evidence of record, yet failed to discuss the supportability of Dr. Pereyra's opinion as required by SSA regulations. 20 C.F.R. § 404.1520c. The ALJ's failure to sufficiently consider Dr. Pereyra's opinion cannot be harmless error, because a claimant who meets a listed impairment is deemed per se disabled and eligible for benefits. 20 C.F.R. § 404.1520(a)(4)(iii).

Because the ALJ improperly failed to consider Dr. Pereyra's opinion that Plaintiff met Listing 12.11 between December 10, 2011, and November 30, 2016, the Court cannot affirm the ALJ's decision where the ALJ failed to address whether Plaintiff met Listing 12.11 for a closed period and whether Plaintiff improved following November 30, 2016, such that Plaintiff was capable of work. *See Higginbotham v. Astrue*, 2011 WL 5859763, at *4 (C.D. Cal. Nov. 21, 2011) (ALJ erred in rejecting medical expert opinion that plaintiff met listing for closed period); *Gehrman v. Colvin*, 2016 WL 792039, at *3-4 (W.D. Wash. Mar. 1, 2016) (ALJ erred in failing to consider opinion that plaintiff met listing). Because the Commissioner is better situated to evaluate the evidence of record at step three, this Court will remand for further evaluation of whether Plaintiff meets Listing 12.11 at step three. *See Marcia v. Sullivan*, 900 F.2d 172, 177 (9th Cir. 1990).

## B.    Medical Source Opinions

Plaintiff next argues that the ALJ erred in evaluating the opinions of Amanda Kerr, D.O., Kristine Autry, Ed.D., and Jeremiah Isbell, Psy.D., the psychological consultative examiner. (Doc. 16 at 7-8; Doc. 20 at 4-5)

### 1.    Legal standard

For disability benefits claims filed prior to March 27, 2017, Social Security Administration ("SSA") regulations classified medical opinion sources into three types: 1) treating physicians (who treat a claimant), 2) examining physicians (who examine but do not treat a claimant), and 3) non-examining physicians (who do not examine or treat a claimant). *Lester*, 81 F.3d at 830. An ALJ was instructed to give more weight to treating medical sources than non-examining sources due to a treating physician's heightened familiarity with a claimant's condition. 20 C.F.R. § 404.1527(a)(2). If the ALJ declined to

give controlling weight to a treating physician's contradicted opinion, the ALJ had to provide "specific and legitimate reasons supported by substantial evidence" for rejecting that source's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

For disability benefits claims filed after March 27, 2017, including the application in the present case[1], new SSA regulations instruct an ALJ not to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c. Instead, an ALJ should determine the persuasiveness of each medical opinion using the following factors: 1) supportability, 2) consistency, 3) relationship with the claimant, 4) specialization, and 5) any other relevant factors. *Id*. The SSA has explained that supportability and consistency are the most important factors in evaluating an opinion's persuasiveness, and the ALJ must articulate how she considered both factors. *Id*.; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5853 (Jan. 18, 2017) (codified at 20 C.F.R. § 404).

The Ninth Circuit recently held that the 2017 SSA regulations no longer require an ALJ to provide specific and legitimate reasons for rejecting a medical source opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Instead, an ALJ must only support her decision to discount a medical source opinion with substantial evidence. *Id*.

### 2. Medical source opinions

#### a. Amanda Kerr, D.O.

On May 13, 2019, Amanda Kerr, D.O., Plaintiff's treating psychiatrist, completed a Mental Residual Functional Capacity Questionnaire. (R. at 1901-05) Dr. Kerr described the clinical findings underlying her opinion and checked boxes for Plaintiff's observed signs and symptoms of impairment. (R. at 1901-03) Dr. Kerr checked boxes that Plaintiff could do the following for more than 2.6 hours per day: understand and remember very short and simple instructions; carry out very short and simple instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; get

---

[1] Plaintiff filed his application on June 17, 2019. (R. at 15).

along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; set realistic goals or make plans independently of others; deal with street of semiskilled and skilled work; interact appropriately with the public; and maintain socially appropriate behavior. (R. at 1903-04)

Dr. Kerr checked boxes that Plaintiff could do the following for less than 2.6 hours per day: remember work-like procedures; maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; complete a normal workday or workweek without interruptions from psychologically-based symptoms; accept instructions and respond appropriately to criticism from supervisors; deal with normal work stress; understand and remember detailed instructions; and carry out detailed instructions. (*Id*.)

Dr. Kerr opined that Plaintiff was unable to meet competitive standards for maintaining attention for two hours, but Dr. Kerr opined that Plaintiff had no limitation to complete the following: ask simple questions or request assistance; be aware of normal hazards and take appropriate precautions; adhere to basic standards of neatness and cleanliness; travel in unfamiliar places; and use public transportation. (*Id*.) Dr. Kerr opined that Plaintiff's impairments would cause Plaintiff to be absent from work about three days per month but cautioned that this metric was difficult to estimate accurately. (R. at 1905) As explanation for the aforementioned limitations, Dr. Kerr stated that Plaintiff's mood disorder, ADHD, and intellectual disability affected Plaintiff's concentration and ability to complete tasks, that Plaintiff had a history of social interaction issues, and that Plaintiff was unable to manage his own benefits, but that Plaintiff had a guardian in place. (R. at 1903-05)

### b.  Kristine Autry, Ed.D.

On May 3 and 17, 2020, psychologist Kristine Autry, Ed.D., examined Plaintiff and completed a psychological evaluation report. (R. at 1674-1692; *see also* R. at 1693-1706) Dr. Autry evaluated Plaintiff's medical, developmental, and educational history, Plaintiff's

previous evaluations, and Plaintiff's work history in addition to Dr. Autry's own testing and observations of Plaintiff. (R. at 1675-86) Based on her evaluation, Dr. Autry diagnosed Plaintiff with ADHD, generalized anxiety disorder, and autism spectrum disorder. (R. at 1686)

In summary, Dr. Autry observed that Plaintiff's testing performance was impacted by poor attention and inability to maintain mental effort and that Plaintiff was easily distracted and often self-distracted. (*Id.*) Dr. Autry opined that Plaintiff was at risk of internalizing symptoms of anxiety and depression and of developing further emotional and behavioral problems due to Plaintiff's sensitivity and impulsivity. (R. at 1686-87) Dr. Autry further opined that Plaintiff's presentation met criteria for autism spectrum disorder, that Plaintiff's difficulty with communication and social skills caused difficulty understanding social norms and adjusting his behavior to expectations of a work environment, and that Plaintiff had difficulty connecting with peers. (*Id.*)

### c.  Jeremiah Isbell, Psy.D.

On June 20, 2018, psychological consultative examiner Jeremiah Isbell, Psy.D., examined Plaintiff and completed a Psychological/Psychiatric Medical Source Statement. (R. at 1111-12) As for Plaintiff's understanding and memory, Dr. Isbell stated that Plaintiff did not allege or present with cognitive impairment; had a fair general fund of information; had a fair memory; could understand and remember simple and detailed instructions; could comprehend most questions with no major difficulty or delay; and had no major signs of confusion. (R. at 1111)

As for Plaintiff's sustained concentration and persistence, Dr. Isbell opined that Plaintiff did not present with depressed mood, overt anxiety, overt attention-deficit, or hyperactivity symptomatology and demonstrated an ability to carry out simple instructions and maintain attention and adequate concentration. (*Id.*)

As for Plaintiff' social interaction, Dr. Isbell opined that Plaintiff was mildly to moderately socially underdeveloped and observed that Plaintiff had multiple awkward handshakes and made immature jokes. (*Id.*) Further, Plaintiff showed limited insight and/or

self-awareness. (*Id.*) However, Dr. Isbell also observed that Plaintiff was overall appropriate, had appropriate eye contact, and had no significant behavior anomalies. (*Id.*) Although Plaintiff's presentation at the examination suggested no major difficulties in interaction with the public, coworkers, or supervisors, Dr. Isbell nevertheless opined that based on a review of the record and on Plaintiff's reports, Plaintiff could have some difficulty interacting with the public, coworkers, or supervisors and could have some social difficulties, due to external stressors and Plaintiff's limited insight. (R. at 1112)

Finally, as for Plaintiff's ability to adapt to change, Dr. Isbell stated that Plaintiff could answer most questions during the evaluation, did not show psychiatric distress, appeared capable of generally responding to change in a work setting, and appeared capable of recognizing and taking appropriate precautions for hazards. (*Id.*) Dr. Isbell also opined that Plaintiff likely had mild to moderate limitations related to social immaturity and a lack of developed independent living skills. (*Id.*) Further, Plaintiff would likely require a significantly structured environment and might experience exacerbated symptoms due to situational stressors. (*Id.*)

### 3. ALJ's findings

With respect to Dr. Kerr's opinion, the ALJ found Dr. Kerr's opinion limitedly persuasive. (R. at 24) Although Dr. Kerr opined regarding Plaintiff's limitations for abilities necessary for unskilled, semi-skilled, and skilled work and for social functioning, the ALJ found that Dr. Kerr had not specified Plaintiff's mental functioning limitations in terms of the degree of limitation—namely whether Plaintiff had none, mild, moderate, or marked limitation. (*Id.*)

With respect to Dr. Autry's opinion, the ALJ determined that Dr. Autry found that Plaintiff met criteria for autism spectrum disorder, that Plaintiff had difficulty with social norms, expectations of a work environment, and connecting with peers, and that Plaintiff was at risk for internalizing anxiety and depression. (R. at 23) The ALJ found Dr. Autry's opinion partially persuasive due to consistency with Plaintiff's "documented autism spectrum disorder and anxiety, which would cause difficulty in social interaction,

especially with regard to working on teams or tandem tasks as well as interaction with others." (R. at 23-24) However, the ALJ found Dr. Autry's opinion less persuasive due to a lack of specificity as to Plaintiff's degree of limitation in mental functioning, understanding and memory, maintaining concentration, persistence and pace, and adaptation. (R. at 24)

With respect to Dr. Isbell's opinion, the ALJ determined that Dr. Isbell found that Plaintiff would experience mild to moderate difficulty in day-to-day employment, but that Plaintiff would have periods of increased symptoms if Plaintiff were to experience increased stress and external pressures. (R. at 23) The ALJ found Dr. Isbell's opinion partially persuasive due to consistency with Plaintiff's documented mental health conditions and stabilization of symptoms with treatment. (*Id*.) However, the ALJ found Dr. Isbell's opinion less persuasive regarding Plaintiff's increased symptoms because (1) the examiner did not specify the intensity and frequency of increased symptoms and (2) this opinion was inconsistent with Plaintiff's progress as documented in treatment notes from mental healthcare providers. (*Id*.)

### 4. Discussion

#### a. Dr. Kerr

The ALJ failed to provide substantial evidence to discount Dr. Kerr's opinion. As defined in 20 C.F.R. § 404.1513(a)(2)(ii), a medical opinion is a statement regarding what a claimant can do despite his impairments and may assess a claimant's "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting[.]" Dr. Kerr addressed each of the aforementioned categories of limitations in her opinion. (R. at 1903-04) Although the ALJ found that Dr. Kerr did not address the degree of Plaintiff's limitations, Dr. Kerr framed Plaintiff's limitations in terms of whether Plaintiff had no limitation, was limited to an activity for more or less than 2.6 hours per day, or was unable to meet competitive standards. (R. at *Id*.) The SSA regulations do not expressly require that a physician state a

claimant's limitations specifically in terms of mild, moderate, or marked limitation. *See* 20 C.F.R. § 404.1513(a)(2). Respondents do not point to a regulation that requires a physician to use the categories of mild, moderate, or marked limitations; to the extent that Respondents cite 20 C.F.R. § 404, Subpart P, Appendix 1, 12.00F(2), such regulations address an ALJ's evaluation of the paragraph B criteria. Moreover, Dr. Kerr's opinion was not so vague regarding the extent of Plaintiff's limitations that the ALJ could reject Dr. Kerr's opinion for this reason. *C.f. Miranda J. L v. Comm'r of Soc. Sec. Admin.*, 2020 WL 4207545, at \*5 (D. Or. July 22, 2020) (ALJ did not err in rejecting opinion that did not specify or quantify plaintiff's limitations and was too vague to assess RFC); *John Allen L. v. Comm'r of Soc. Sec. Admin.*, 2019 WL 1583554, at \*3-4 (W.D. Wash. Apr. 12, 2019) (ALJ did not err in rejecting opinions that used vague and undefined terms for plaintiff's limitations). To the contrary, Dr. Kerr assessed Plaintiff's limitations in terms of four clearly defined levels.

Further, the ALJ failed to assess the supportability and consistency of Dr. Kerr's opinion as required by SSA regulations. 20 C.F.R. § 404.1520c. In doing so, and in failing to provide sufficient reasons to discount Dr. Kerr's opinion, the ALJ erred in evaluating Dr. Kerr's opinion. Thus, remand for further evaluation of Dr. Kerr's opinion is warranted.

### b.  Dr. Autry

The ALJ provided substantial evidence to discount Dr. Autry's opinion. The ALJ addressed the consistency of Dr. Autry's opinion. However, the ALJ also accurately determined that Dr. Autry failed to address Plaintiff's limitations in areas such as mental functioning, understanding and memory, maintaining concentration, persistence and pace, and adaptation. A physician's opinion should assist an ALJ's RFC determination by assessing how a claimant's impairments translate into specific limitations. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Although Dr. Autry's report and recommendations discussed her observations of Plaintiff's impairments, Dr. Autry did not assess specific limitations stemming from these observations such as how Plaintiff's impairments affected Plaintiff's understanding, memory, concentration,

persistence, pace, ability to carry out instructions, and ability to interact with others. *See* 20 C.F.R. § 404.1513(a)(2)(ii). Because Dr. Autry did not specify any degrees of limitations in various areas in her opinion, the ALJ properly provided substantial evidence to discount Dr. Autry's opinion on this basis. *See Miranda J. L v. Comm'r of Soc. Sec. Admin.*, 2020 WL 4207545, at *5 (D. Or. July 22, 2020) (under prior regulations, failure to translate symptoms into "specific functional deficits" was specific and legitimate reason to discount opinion). Accordingly, the ALJ did not err in discounting Dr. Autry's opinion.

### c.  Dr. Isbell

The ALJ also provided substantial evidence to discount Dr. Isbell's opinion. At the outset, although the ALJ stated that Dr. Isbell performed his examination in June 2020, when Dr. Isbell examined Plaintiff in June 2018, the ALJ's misstatement is not harmful error as it did not affect the ALJ's analysis. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (error not harmful if inconsequential to final disability determination). The ALJ sufficiently evaluated the consistency of Dr. Isbell's opinion, finding that Dr. Isbell's opinion was generally consistent with the record aside yet was inconsistent with Plaintiff's documented progress. (R. at 23) Further, the ALJ accurately stated that Dr. Isbell failed to address the intensity of Plaintiff's increased symptoms or how frequently Plaintiff would experience increased symptoms. An ALJ may find an opinion more persuasive where a medical source provides explanations to support his opinion. 20 C.F.R. § 1520c(c)(1). In describing Plaintiff's abilities, Dr. Isbell stated that Plaintiff may have "at least some difficulties socially, which are expected to be exacerbated by external stressors and [Plaintiff's] limited insight" and that Plaintiff might have exacerbated symptoms "in relation to situational stressors." (R. at 1112) Because Dr. Isbell did not explain how often or how intensely Plaintiff would experience increased symptoms, the ALJ could properly discount Dr. Isbell's opinion on this basis. *See John Allen L. v. Comm'r of Soc. Sec. Admin.*, 2019 WL 1583554, at *2-3 (W.D. Wash. Apr. 12, 2019) (under prior regulations, failure to specify degrees of limitations was specific and legitimate reason supported by substantial evidence). Accordingly, the ALJ did not err in

1    doing so.

2    **C.    Plaintiff's Symptom Testimony**

3    Finally, Plaintiff argues that the ALJ erred by failing to provide clear and convincing

4    reasons to reject Plaintiff's symptom testimony. (Doc. 16 at 8-12; Doc. 20 at 5-9) As part

5    of this argument, Plaintiff asserts that the ALJ erred in failing to address the testimony of

6    Patricia Dillard, Plaintiff's mother and legal guardian, regarding Plaintiff's symptoms.

7    (Doc. 16 at 11-12; Doc. 20 at 9)

8    *1.  Legal standard*

9    When evaluating subjective symptom testimony, an ALJ must first find objective

10   medical evidence demonstrating an impairment that could reasonably cause a claimant's

11   symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996); 20 C.F.R. §

12   505.1529(a)-(b). A claimant's subjective testimony alone will not establish a disability,

13   and an ALJ will determine whether the claimant's alleged limitations are consistent with

14   medical sources. 20 C.F.R. § 404.1529(a). Once the claimant has shown such an

15   impairment, if there is no evidence of malingering, the ALJ may reject a claimant's

16   symptom testimony only if he offers "specific findings stating clear and convincing reasons

17   for doing so" supported by substantial evidence. *Smolen* at 1279, 1283-84. "The clear and

18   convincing standard is the most demanding required in Social Security cases." *Garrison v.*

19   *Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*,

20   278 F.3d 920, 924 (9th Cir.2002)). "[T]he ALJ must specifically identify the testimony she

21   or he finds not to be credible and must explain what evidence undermines the testimony."

22   *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings regarding

23   the Plaintiff's credibility are insufficient. *Id.*

24   Although an ALJ may consider the objective medical evidence, the ALJ may not

25   use a lack of such evidence as the sole basis to discount a claimant's testimony. *Bray v.*

26   *Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); 20 C.F.R. §

27   404.1529(c)(2). An ALJ may also consider a "claimant's daily activities, inconsistencies

28   in testimony, effectiveness or adverse side effects of any pain medication, and relevant

1   character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); 20 C.F.R. §

2   404.1529(c)(3). If "the evidence is susceptible to more than one rational interpretation[,]"

3   the Court will uphold the ALJ's conclusion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038

4   (9th Cir. 2008) (superseded by statute on other grounds).

5                              *2.  Plaintiff's testimony*

6          At the ALJ hearing, Plaintiff testified that he was unable to work full-time due to

7   his impairments. (R. at 39) Plaintiff testified that he has difficulty with working memory,

8   that he experiences tremors in his hands and body, and that he has a frontal lobe disorder,

9   and Plaintiff stated that he took various medication for some of his mental and physical

10  conditions. (R. at 39-42) Plaintiff stated that his autism diagnosis affected his personal

11  skills and may cause him to act out or to not display adult behavior. (R. at 41) Plaintiff also

12  testified that he experiences anxiety, was unable to drive due to his vision, and that he lived

13  with his mother, who helped Plaintiff with daily activities such as taking his pills and

14  remembering chores and appointments. (R. at 42-45) Plaintiff testified that his visual

15  impairments affected his ability to read and perform a job. (R. at 45-46) Plaintiff testified

16  that in a work environment, he had trouble interacting with people, that he experienced

17  conflicts with coworkers, such as younger coworkers telling Plaintiff what to do and

18  coworkers leaving for lunch without Plaintiff, and that Plaintiff occasionally got frustrated

19  or upset with others and would yell. (R. at 46-47) Plaintiff testified that for a period, he

20  lived in a supported living environment where he was taught to shop for groceries. (R. at

21  47-49) Plaintiff also testified that in school, he was placed in special education classes (R.

22  at 44-45)

23                              *3.  Patricia Dillard's testimony*

24          At the ALJ hearing, Plaintiff's mother and legal guardian, Patricia Dillard, testified

25  that the Maricopa County Superior Court appointed her to be Plaintiff's legal guardian for

26  all matters of decision making when Plaintiff turned 18. (R. at 50-51) Plaintiff had lived at

27  a post-secondary school for special needs students, where Plaintiff attended life skills

28  classes, received counseling, and was supervised in taking his medication. (R. at 51-52)

Plaintiff's mother testified that she supervised his medication because Plaintiff got confused. (R. at 52-53) Plaintiff's mother testified that Plaintiff needed a list to grocery shop and could not shop on his own, had emotional outbursts that caused physical damage to the family's house, and experienced conflicts with coworkers and supervisors. (R. at 53-54) Plaintiff's mother also described Plaintiff's difficulty following simple instructions. (R. at 54) As for Plaintiff's education, Plaintiff's mother testified that Plaintiff was temporarily placed in regular classes in high school but was expelled from one school for bad behavior such as outbursts, yelling, and placing a teacher in a headlock. (R. at 55-56) Plaintiff's mother further testified that Plaintiff had difficulty with impulse control, needed a structured environment, and could not do a job full time due to Plaintiff becoming distracted, making bad decisions, and having interpersonal issues. (R. at 56-57) As for part-time work, Plaintiff's mother testified that Plaintiff had trouble getting along with others in past part-time jobs. (*Id.*) Plaintiff's mother explained that Plaintiff was job-searching with the assistance of a job coach through Vocational Rehabilitation of Arizona, who would meet with the interviewer and explain Plaintiff's limitations as well as how Plaintiff could best fit into the workplace, but Plaintiff had been unsuccessful in securing employment from his applications for positions such as busser, dishwasher, and part retrieval person. (*Id.* at 57-58)

### 4.  ALJ's findings

Although the ALJ found that Plaintiff's medically determinable impairments could reasonably cause Plaintiff's alleged symptoms, the ALJ determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence of record. (R. at 21) Further, the ALJ determined that the severity of Plaintiff's impairments was not to the degree that Plaintiff alleged. (*Id.*)

The ALJ found that the evidence of record showed Plaintiff's history of neurodevelopmental disorder, ADHD, bipolar disorder, depression, and anxiety. (R. at 21) The ALJ's findings reflected treatment for these conditions, including psychotropic medications and psychotherapy. (*Id.*) The ALJ found some notation of Plaintiff's non-

compliance with his treating providers' treatment recommendations. (*Id.*) Based on provider notes from a July 2011 neuropsychological report, the ALJ discussed that Plaintiff was stated to have a history of neurobehavioral indications of ADHD and significant signs of frontal lobe dysfunction, but Plaintiff was reported to be very cooperative, to be motivated to carry out tasks, and to have symptoms compatible with diagnoses of ADHD and frontal lobe dysfunction. (*Id.*) The ALJ noted that at Plaintiff's July 2011 neuropsychological appointment, the provider recommended ongoing psychotherapy and psychiatric treatment. (*Id.*) The ALJ described treatment notes from January 2018, which reflected that Plaintiff was calm and euthymic, had good eye contact, and had a logical, coherent thought process. (*Id.*) The ALJ noted that Plaintiff's provider stated that Plaintiff reported he was doing well, had a stable mood, and was able to focus and concentrate, and Plaintiff's provider continued Plaintiff's psychotropic medications. (*Id.*) The ALJ discussed treatment notes from later in January 2018, which reflected that Plaintiff had normal behavior, euthymic mood, reactive, mood-congruent affect, intact short-term and long-term memory, goal directed and logical thought content, and good insight and judgment. (*Id.*) In April and May 2018, the ALJ noted that Plaintiff was reported to have medication side effects of drowsiness and irritability, and Plaintiff's medication dosage and schedule was altered. (*Id.*)

Based on a psychological consultative examination from June 2018, the ALJ found that Plaintiff reported good mental and emotional functioning, less frequent mood swings, yet some periods of depressed mood, and Plaintiff reported that counseling was helpful and that medications helped with focus and attention. (*Id.*) The ALJ recognized that Plaintiff was observed to have a socially awkward interaction style, yet Plaintiff was overall appropriate and had fair insight and judgment, good mood, euthymic affect, logical and linear thought process, and average fund of knowledge. (*Id.*) The ALJ found that the psychological consultative examiner acknowledged Plaintiff's unspecified neurodevelopmental disorder and found that Plaintiff had a good prognosis if Plaintiff continued to participate in mental health treatment. (*Id.*) The ALJ noted that in November

2018, Plaintiff was hospitalized for psychological issues, but upon discharge, Plaintiff was reported to have good mood, full and bright affect, normal attention span and concentration, and good recent and remote memory. (R. at 21-22)

Based on treatment notes from March to July 2019, the ALJ stated that Plaintiff was observed to have a euthymic mood, appropriate affect, logical thought process, good eye contact, and good concentration, and the ALJ found that the treatment notes reflected that Plaintiff had remarkable or steady progress. (R. at 22) In some of these treatment notes, the ALJ recognized that Plaintiff was observed to have limitations in memory, judgment, and insight, yet in other notes, Plaintiff had intact immediate, short-term, and long-term memory, good insight, good judgment, and good impulse control. (*Id*.) Although the ALJ acknowledged that Plaintiff was hospitalized in September 2019, the ALJ also found that hospital notes described Plaintiff's improving mood, improving depressive symptoms, and intact insight, but fair judgment, attention, and concentration. (*Id*.) In discussing Plaintiff's subsequent treatment notes, the ALJ found that between October 2019 and February 2020, Plaintiff reported that he was doing well, was observed to have a euthymic mood and appropriate affect, and had steady or remarkable progress; between April and July 2020, Plaintiff had stable symptoms, euthymic mood, appropriate eye contact, good concentration, and continued steady progress; and in September 2020, Plaintiff was irritable but also had stable agitation, impulsivity, and mood dysregulation and steady progress. (*Id*.)

Based on a May 2020 psychological evaluation, the ALJ found that the evaluator acknowledged Plaintiff's ADHD, anxiety, and autism spectrum disorder and stated that Plaintiff had an average general fund of knowledge and age-appropriate working memory. (*Id*.) However, the ALJ acknowledged that Plaintiff's adaptive behavior was observed to be in the low range. (*Id*.) The ALJ noted that Plaintiff displayed high characteristics of autism spectrum disorder, and Plaintiff's reported difficulty maintaining focus, easy distractibility, and high need for movement were indicative of ADHD. (*Id*.)

### 5. Discussion

The ALJ did not provide sufficiently clear and convincing reasons to discount Plaintiff's symptom testimony. An ALJ must provide more than general findings and identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). With mental health impairments in particular, the ALJ cannot cherry-pick sources and must read evidence in context. *See, e.g., Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."); *Holohan*, 246 F.3d at 1208 (some improvement in plaintiff's severe panic attacks, anxiety, and depression did not mean that symptoms would not affect the plaintiff's function at work). Mental health issues may increase and decrease with occasional improvement and occasional regression. *Id*.

The ALJ primarily discounted Plaintiff's testimony based on the objective medical evidence, finding that Plaintiff was observed on various occasions to have euthymic affect, logical thought process, intact memory, good insight and judgment, good eye contact, and good concentration yet was also observed on other occasions to have limited memory, judgment, insight, attention, and concentration. (R. at 21-22) The ALJ also noted that Plaintiff had "steady" or "remarkable" progress and stable symptoms. (*Id*.) However, stable symptoms do not necessarily mean that Plaintiff's symptoms were under control, but merely that Plaintiff's symptoms had not changed or worsened. *See Martin Jean K. v. Comm'r Soc. Sec. Admin.*, 2019 WL 3061561, at *7 (D. Or. July 10, 2019) ("[T]he stability of a condition does not undermine a plaintiff's allegations as to the intensity, persistence, or limiting effects of the symptoms[.]"); *Kluthe v. Berryhill*, 2018 WL 775298, at *9 (E.D. Cal. Feb. 8, 2018) (discussing difference between stability of symptoms and functionality).

Moreover, the record reflects periods of increased symptoms as well as periods of decreased symptoms. A plaintiff's "improved functioning while being treated and while

limiting environmental stressors does not always mean that a claimant can function effectively in a workplace[.]" *Garrison*, 759 F.3d at 1017. On the whole, the record reflects Plaintiff's long-standing history of mental health conditions, including the waxing and waning of Plaintiff's symptoms related to these conditions. The Court is not persuaded that the ALJ's discussion of Plaintiff's medical treatment and symptom testimony interpreted Plaintiff's periods of improvement "with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Id*.

In evaluating a claimant's symptom testimony, "[p]roviding a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (emphasis in original). An ALJ must still identify which subjective testimony is not credible and then explain how the objective medical evidence contradicts that testimony. *Id*. In simply summarizing the medical evidence, the ALJ failed to address how such evidence conflicts with Plaintiff's testimony. For instance, Plaintiff testified to conflicts with coworkers, difficulty getting along with others, distractibility, and difficulty following instructions. (R. at 39-45) The ALJ did not explain how cited observations of Plaintiff's good mood, intact memory, good insight, and good eye contact contradict Plaintiff's symptom testimony. Instead, the ALJ's cited observations of Plaintiff's fair judgment, attention, and concentration, mood swings, awkward social interaction, difficulty maintaining focus, and easy distractibility tend to support Plaintiff's testimony.

In addition to the objective medical evidence, the ALJ discounted Plaintiff's testimony based on Plaintiff's treatment history. *See Orteza*, 50 F.3d at 750. An ALJ may consider the dosage, effectiveness, and side effects of medication taken for an impairment. 20 C.F.R. § 404.1529(c)(3)(iv). If symptoms can be controlled effectively with medications and treatment, a plaintiff's condition is not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). However, even if a claimant has fewer symptoms with treatment, "symptom-free periods may be consistent with disability." *Carlson v.*

*Astrue*, 682 F. Supp. 2d 1156, 1166 (D. Or. 2010). Plaintiff's hospitalizations in November 2018 and September 2019, treatment notes reflecting increases and decreases in symptoms, and Plaintiff's most recent psychological evaluation in May 2020, in which Plaintiff displayed evident characteristics of ADHD and autism spectrum disorder, do not suggest that Plaintiff's symptoms were controlled effectively with medications and treatment. The ALJ also acknowledged that Plaintiff's medications caused side effects such as drowsiness and irritability and stated that Plaintiff's providers subsequently changed the timing and dosage of Plaintiff's medications in April and May 2018. (R. at 21) Yet the ALJ failed to recognize that despite the adjustment to Plaintiff's medications in May 2018, Plaintiff continued experiencing side effects such as drowsiness, causing Plaintiff's providers to adjust Plaintiff's medications well beyond May 2018. (*See, e.g.,* R. at 1737, 1767, 1832-34, 1882, 1893, 1896-97) The ALJ's failure to address Plaintiff's continued side effects is particularly concerning where the record reflects that Plaintiff was fired from employment for drowsiness. (*See* R. at 1832, 1834); *See Salazar v. Astrue*, 859 F.Supp.2d 1202, 1228 (D. Or. 2012) (ALJ erred in failing to consider impact of side effects on ability to work); *c.f. Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (ALJ did not err where record only had passing mention to side effects that did not appear to interfere with ability to work).

Further, the ALJ erred with respect to the testimony of Plaintiff's mother. Pursuant to 20 C.F.R. § 404.1513(a)(4), an ALJ may consider evidence from nonmedical sources. Although an ALJ is not required to articulate how she considered nonmedical source evidence under the same requirements as medical evidence, 20 C.F.R. § 404.1520c(d), lay evidence is nevertheless competent evidence that "*cannot* be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To discount lay witness testimony, an ALJ "must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). If lay witness testimony describes the same limitations as a claimant's symptom testimony and the ALJ has provided clear and convincing reasons to reject a claimant's testimony, an ALJ may reject the lay witness

1   testimony for the same reasons as the claimant's testimony. *Molina v. Astrue*, 674 F.3d

2   1104, 1122 (9th Cir. 2012) (superseded by statute on other grounds).

3        Plaintiff's mother's testimony regarded how Plaintiff's impairments impact

4   Plaintiff's ability to work, including that Plaintiff experienced conflicts with coworkers,

5   had difficulty following instructions, and could become distracted at work. (R. at 50-57)

6   As Defendant correctly points out, the ALJ addressed Plaintiff's mother's testimony as part

7   of the ALJ's RFC determination, prior to discussing the evidence of record which

8   contradicted Plaintiff's and his mother's testimony. (R. at 21) However, Plaintiff's mother

9   testified to similar limitations as Plaintiff described in his own testimony (*see* R. at 39-45),

10  and as discussed *supra*, the ALJ did not provide sufficiently clear and convincing reasons

11  to discount Plaintiff's symptom testimony. The ALJ provided no further reasons germane

12  to the testimony of Plaintiff's mother. Because the ALJ neither provided reasons germane

13  to Plaintiff's mother's testimony nor provided clear and convincing reasons to discount

14  Plaintiff's testimony that may apply equally to the testimony of Plaintiff's mother, the ALJ

15  erred in this regard. *C.f. Molina*, 674 F.3d at 1122.

16        In sum, the ALJ failed to provide clear and convincing reasons supported by

17  substantial evidence to reject the testimony of Plaintiff and his mother. Remand for further

18  evaluation of Plaintiff's testimony and the testimony of Plaintiff's mother is necessary.

19  **IV.    CREDIT-AS-TRUE RULE**

20        Plaintiff argues that the ALJ's errors require this Court to apply the credit-as-true

21  rule and remand his case for computation of benefits. (Doc. 16 at 12-14) Although the

22  ordinary remedy for reversible error is to remand the case for further administrative

23  proceedings, the credit-as-true rule may apply in rare circumstances where three conditions

24  are present. *Garrison*, 759 F.3d at 1020. First, the record must be fully developed, and

25  further administrative proceedings would not be useful to resolve ambiguities or conflicts.

26  *Id.; Treichler*, 775 F.3d at 1101. Second, the ALJ must have failed to give "legally

27  sufficient reasons for rejecting evidence," including subjective testimony and medical

28  opinions. *Id*. Third, if the discounted or rejected evidence was credited as true, the ALJ

would be required to find that the claimant is disabled. *Id*.

Although the ALJ failed to properly evaluate Dr. Kerr's opinion, failed to sufficiently evaluate whether Plaintiff met Listing 12.11 at step three, failed to provide clear and convincing reasons to reject Plaintiff's symptom testimony, and failed to provide germane reasons to reject the testimony of Plaintiff's mother, the record is not fully developed. Further proceedings would be useful to assess whether Plaintiff met Listing 12.11; to allow the ALJ to reassess Dr. Kerr's improperly discounted medical opinion, Plaintiff's symptom testimony, and the testimony of Plaintiff's mother; and incorporate the improperly discounted medical opinions and testimony, as necessary, into the hypothetical posed to the vocational expert. As such, the credit-as-true rule does not apply.

## V.    CONCLUSION

The ALJ provided substantial evidence to discount the opinions of Kristine Autry, Ed.D., and Jeremiah Isbell, Psy.D. However, the ALJ erred in evaluating whether Plaintiff met Listing 12.11 at step three of the sequential disability evaluation; failed to provide substantial evidence to discount the opinion of Amanda Kerr, D.O.; failed to provide clear and convincing reasons to reject Plaintiff's symptom testimony; and failed to provide germane reasons to reject the testimony of Plaintiff's mother, Patricia Dillard. The Court therefore vacates the final decision of the Commissioner (R. at 15-26) and remands for further administrative proceedings.

Accordingly,

**IT IS ORDERED** that the July 29, 2021, decision of the ALJ (R. at 15-26) is reversed.

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for further administrative proceedings.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment consistent with this Order and close this case.

Dated this 9th day of May, 2023.

Honorable Deborah M. Fine
United States Magistrate Judge